IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 4:25-cr-00129 |
| | ) | |
| v. | ) | |
| | ) | |
| EZEKIEL DEAN POTTER, | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

## TABLE OF CONTENTS

I.      INTRODUCTION ………………………………………………………………1

II.     ARGUMENT …………………………………………………………………….2

III.    CONCLUSION …………………………………………………………………12

### I.      INTRODUCTION

On October 15, 2025, the government obtained a one-count indictment charging Ezekiel Dean Potter with computer fraud, in violation of 18 U.S.C. § 1030(a)(5)(A), 1030(b), and 1030(c)(4)(B)(i).  (PSR ¶1).  On January 28, 2026, Mr. Potter pled guilty to the indictment without a plea agreement, and the Court accepted his guilty plea and adjudicated him guilty on February 13, 2026.  (PSR ¶¶2–3).  There are no counts to dismiss.  *Id*.

The advisory sentencing guideline calculation results in a total offense level of seventeen. (PSR ¶43).  That calculation begins with a base offense level of six, includes an enhancement of eight levels for a loss amount of more than $95,000 but less than $150,000,[1] a two-level increase

---

[1]  Although the advisory sentencing guideline is correctly calculated under the current manual, Mr. Potter notes that the proposed inflationary adjustment amendment to the loss table scheduled

for the offense involving the use of sophisticated means, an increase of four levels because the conviction falls under 18 U.S.C. § 1030(a)(5)(A), and a two-level increase because the offense involved the use of special skill or abuse of a position of trust.  (PSR ¶¶32–37).  After calculating Mr. Potter's criminal history category as I, applying a two-level reduction for him being a zero-point offender, and a three-level reduction for his acceptance of responsibility for his offense, the total offense level becomes seventeen, and the advisory sentencing guideline range becomes 24 to 30 months of imprisonment.  (PSR ¶¶40–42, 47, 94).  There are no material factual or advisory guideline disputes requiring resolution at sentencing.  The parties jointly recommend that the appropriate restitution figure in the case is $59,668.81, with $27,893.75 going to Travelers Indemnity Company and $31,775.06 to the Saydel Community School District.  The question for the Court is what sentence is "sufficient, but not greater than necessary" for Mr. Potter under the factors of 18 U.S.C. § 3553(a), and Mr. Potter respectfully argues that a sentence to a term of probation would be sufficient in this case.

## II.     ARGUMENT

Ezekiel Potter worked as a senior information technology (IT) support specialist at Saydel Community School District (the District) from May 24, 2022, to April 30, 2023.  (PSR ¶7).  Soon after Mr. Potter's employment ended, the District began experiencing some cyber intrusion events.  (PSR ¶9).  The District first noticed problems on June 1, 2023, when its Facebook account was deleted and all administrative access for current employees to the account had been removed.  *Id*.  Only Mr. Potter and another IT employee had administrative access to

---

to be adopted in November 2026—absent Congressional intervention—would result in an increase of six levels for loss rather than the current eight.  *See* United States Sentencing Commission, *Amendments to the Sentencing Guidelines*, p.28 (April 30, 2026), *available at*: https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202605_RF.pdf (last accessed June 4, 2026, at 10:26AM).

the Facebook page at that point in time.  (PSR ¶10).  The District ultimately could not recover the original Facebook account, and a new account had to be created in August of 2023.  *Id.*

On June 14, 2023, the District experienced another cyber security incident involving unauthorized access to its Apple School Manager account, when an unauthorized user accessed the account and attempted to delete all user accounts, deleted user account passwords and phone numbers, restricted access, deleted billing information, and removed the primary mobile device management server information.  (PSR ¶11).  This resulted in the District's management of all MacBooks and iPads being disabled.  *Id.*  District IT personnel had to work with Apple for a week to restore access.  *Id.*

Then, in late July 2023, the District experienced unauthorized access to its GoDaddy account, and on August 17, 2023, there was an unsuccessful attempt to reset usernames and passwords associated with the account.  (PSR ¶12).  GoDaddy records showed a specific internet protocol (IP) address that had accessed or attempted to access various District accounts 26 times between April 3, 2023, and August 19, 2023.  *Id.*  The IP address was later traced to Mr. Potter. (PSR ¶13).  Specifically, an unsuccessful August 23, 2023, attempt to reset District usernames and passwords through GoDaddy was traced to the IP address of Mr. Potter at his then employment at Casey's Store Support Center.  (PSR ¶¶8, 14).

The next cyber intrusion occurred on January 9, 2025, when Mr. Potter accessed the District's Schoology learning management software account via the District's Google administrator account.  (PSR ¶16).  He deleted the account of one of the District IT employees, which resulted in the disruption of the District staff's ability to access the learning management system and rendered teachers unable to teach classes through the software for two hours.  *Id.*  A week later, Mr. Potter gained unauthorized access to a District administrator account and deleted

nine Gmail accounts, including those of some past and current District IT employees and the District IT Director and Superintendent.  (PSR ¶18).  Mr. Potter changed his IP address to a VPN IP address at one point during the January 16, 2025, unauthorized account accessing, after receiving a Google alert about what he was doing.  (PSR ¶19).  The IP address that accessed the Schoology account without authorization was later traced to Mr. Potter at his then-employer, TPI.  (PSR ¶16).  Further investigation showed that Mr. Potter had also gained unauthorized access on January 9, 2025, to District accounts on other third-party applications and services, and that some connections were revoked or removed in them.  (PSR ¶17).  The IP address trace also showed that Mr. Potter had achieved and attempted to achieve unauthorized access in October of 2024 to some District Google and Gmail accounts.  *Id*.

Mr. Potter left employment at TPI on January 23, 2025.  (PSR ¶20).  Shortly afterwards, he called a TPI employee and asked the employee to retrieve a USB drive from his former desk and "wipe it."  (PSR ¶21).  The employee found the drive and reported it to TPI, which examined the drive contents and found it contained personal information for Mr. Potter, but also contained a file with the Saydel School District online account passwords.  *Id*.  The drive was provided to law enforcement, and the FBI forensically examined it and found various personal documents related to Mr. Potter, three spreadsheets containing usernames and passwords pertaining to the Saydel School District and its IT-related accounts, paystubs from Mr. Potter's employment at the District, and a floorplan for the Saydel High School.  (PSR ¶22).

The indictment in the case was returned in October of 2025.  The District incurred $73,375.00 in costs associated with lost employee time, cyber forensics, lost educational hours, and time spent working with other vendors to remediate the impact of Mr. Potter's unauthorized access and actions of District computer accounts, applications, and services.  (PSR ¶23).  The

4

District's insurance provider, Travelers, also incurred an additional $27,893.75 in payments for cyber forensics and remediation work, resulting in a total loss in the case of $101,268.81. (PSR ¶¶24–25). Mr. Potter was arrested on the charge on October 16, 2025, released on pretrial supervision that same day, and accepted responsibility for his offense and entered a guilty plea to the charge in this case in January of 2026.

There is no dispute in this case that Mr. Potter's offense was serious. After his employment with Saydel Community School District ended, he retained passwords and other computer system information, and on several occasions subsequently accessed or attempted to access school district systems without authorization, deleted accounts, revoked permissions, disrupted access, and caused financial and operational harm to the District. (PSR ¶¶7–23). His actions had a significant impact on the District because he caused problems that he also made difficult for the District to easily repair. His actions involved a breach of trust placed in him to not access or retain access to the District's computer systems, misuse of his computer skills and knowledge, and ultimately hindered a public school district pursuing its mission for the community. Mr. Potter now fully sees the impact of his actions and deeply regrets the harm he caused.

As serious as the offense is, however, it does not necessarily follow that a sentence of imprisonment is necessary for Mr. Potter in this case to satisfy the other sentencing factors of 18 U.S.C. § 3553(a). Mr. Potter is 34 years old and comes before the Court with minimal criminal history. (PSR ¶¶45–48, 52). His sole prior conviction is a 2010 misdemeanor harassment conviction from when he was 18 years old, involving immature conduct from the backseat of a vehicle, for which he received a $65 fine. (PSR ¶46). He has no juvenile adjudications, no pending charges, no other criminal conduct, and a criminal history score of zero under the

advisory sentencing guidelines.  (PSR ¶¶45, 47–49).  He qualifies for the zero-point offender reduction under U.S.S.G. §4C1.1.  (PSR ¶40).  This is not a case involving a defendant who has repeatedly failed under community supervision, has a history of ignoring court orders, or who has demonstrated from his past conduct that incarceration is the sole remedy sufficient to protect the public from him in the future.

In addition, Mr. Potter has performed well on pretrial supervision in this case, which indicates both that he does understand the seriousness of his offense, but also that he will respond well to correctional and rehabilitative treatment in the community.  Pretrial services records reflect that he has complied with all Court-ordered conditions of release and maintained full-time employment.  (PSR ¶4).  He also cooperated with the presentence investigation, has accepted responsibility for his offense conduct, and entered a timely guilty plea without a plea agreement.  (PSR ¶¶2–3, 29, 41–42).  There is no substance abuse problem underlying his conduct that would raise his recidivism risk or make future supervision more challenging, and he has tested negative for all substances throughout the case.  (PSR ¶¶67–69).  Mr. Potter has shown that he can comply with supervision and work well with a Probation Officer.

Mr. Potter's personal history also shows that he is someone with prosocial ties who is engaged with and involved in the community.  He reported having a good childhood, with his basic needs always met, and he has close relationships with both his parents, who remain supportive of him despite knowing about the offense.  (PSR ¶¶52, 55–56).  His mother described him as a "good guy" who knows he has "done wrong."  (PSR ¶54).  He has also been involved in music and community organizations for much of his life.  Beginning in fifth grade and continuing throughout high school, he participated in band, where he played clarinet and did percussion.  (PSR ¶52).  In his senior year, he and his bandmates were selected to participate in

the Macy's Great American Marching Band at the Macy's Thanksgiving Day Parade. *Id*. He currently administers the alumni band's Facebook page, is invited to participate in the parade every five years, and is invited to march in the parade this year for its 100th anniversary. *Id*. He has also been involved with the Optimist International Club since eighth grade, including previously serving as President of the Fort Madison club and as a Lieutenant Governor and Governor for his district. *Id*. Mr. Potter also co-administers a webpage for the Iowa Optimist Club. *Id*. Mr. Potter is involved with the community in positive ways, and has a support system and social network that can hold him accountable for his actions in this case while also helping him move forward from it.

Mr. Potter's individual history and characteristics do not negate his offense conduct. *See United States v. Thibeaux*, 784 F.3d 1221, 1227 (8th Cir. 2015) ("The district court has wide latitude to weigh the § 3553(a) factors and assign some factors greater weight than others."). But they do show that Mr. Potter's offense was out of character from who he has been and who he can be as a person. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("[I]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual."). Mr. Potter is not someone who lacks stability, who has no real connection to his community, or who lacks the capacity or willingness to comply with what the law and society expects from him going forward. He is now a first-time felony offender who has done harm, but who also has demonstrated the ability to learn from his bad acts, is motivated to work, has family and community support, has civic involvement, and has already demonstrated the ability to comply with the rules and orders issued by the Court through pretrial supervision.

Furthermore, the conviction itself in this case has already imposed significant consequences on Mr. Potter's future. Mr. Potter has devoted years of his life to pursuing

education in information technology and cybersecurity, over a significant amount of time and taking on a significant amount of student debt to do so. (PSR ¶¶71–72, 87). He has earned an Associate of Arts degree in music performance, an Associate of Applied Science degree in Information Technology, has certificates in Technical Services Support, Information Technology General, and Cisco Networking Academy, earned a Bachelor of Science degree in Systems and Network Administration, and has multiple Master's degrees in Cybersecurity, Management Information Systems, Information Security Management, and Computer Information Systems and Cybersecurity. (PSR ¶¶71–72). His education and training were directed toward a career in IT systems and cybersecurity. Now, because of his short-sighted abuse of the knowledge and skillset that led to this conviction, the very field he spent years preparing for will be harder to pursue and may effectively be closed to him.

Indeed, that collateral consequence has already manifested in Mr. Potter's circumstances, as he is no longer working in the IT field. Since May 18, 2026, he has been employed by UPS in Des Moines as a full-time loader/unloader earning $21 per hour, and he supplements his income through DoorDash as needed. (PSR ¶73a). Before that, he worked at Dollar General for around ten months as a full-time lead sales associate, earning $14 per hour. (PSR ¶74). Mr. Potter has already moved from professional IT work into lawful non-IT types of employment. He is no longer working in the type of privileged-access IT environment that facilitated the offense conduct. This is a significant consequence for him on a personal and professional level. And, it also substantially reduces his risk of recidivism, because he is now removed from the sorts of positions of trust and information access that gave him the means to commit the crime in this case.

Relatedly, any fears of recidivism can be further reduced through imposition of a probationary sentence that contains tailored and targeted conditions for Mr. Potter. The probation office has recommended cognitive behavioral treatment, a plan to pay restitution for the offense, restrictions on taking on new debt, disclosure of his finances and financial condition, and a search condition covering computers, electronic communications, and data storage devices upon reasonable suspicion. (PSR ¶¶109–113). These conditions directly address many of the risk factors underlying the offense behavior in this case. Cognitive behavioral treatment, for example, might have prevented Mr. Potter from taking the actions in this case by giving him tools to process his emotions and recognize ahead of time the potential impact his actions could have on the Saydel School District and on his own life. And, while not recommended in the final presentence report, the Court can also impose additional narrowly tailored conditions restricting Mr. Potter from possessing unauthorized credentials, utilize monitoring software on his devices if necessary, prevent him from using anonymizing tools without approval, or to restrict him from accepting employment involving administrator-level IT access unless approved in advance by his Probation Officer. A probationary sentence with tailored conditions would protect the public more directly than will a prison sentence, while also providing Mr. Potter with correctional and rehabilitative treatment in the most effective manner within the community rather than removing him from it. *See* 18 U.S.C. § 3582(a) (reminding courts that "imprisonment is not an appropriate means of promoting correction and rehabilitation").

And, while not restricting Mr. Potter's liberty to the same degree as an imprisonment sentence, a sentence to a term of probation is still a form of punishment. The Supreme Court has recognized that probation is a significant sanction, and that a court may impose reasonable conditions restricting freedoms otherwise enjoyed by law-abiding people because of that fact.

*See United States v. Knights*, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled.'" (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987))). Here, a five-year term of probation would subject Mr. Potter to years of continuous federal supervision and restrictions on his lifestyle, with the possibility of revocation and complete resentencing looming in the case if he violates the conditions placed on him.

In addition, the restitution aspect of this case can be better advanced by imposition of a term of probation. As of the time of filing the final presentence report, Mr. Potter has only $7,645.38 in total assets, $261,486.98 in liabilities, and a negative net worth of $253,841.60. (PSR ¶87). His monthly cash flow is slightly negative. *Id*. The probation officer concluded that, based on his present financial status, Mr. Potter is unable to pay a monetary obligation in addition to restitution. (PSR ¶92). He cannot pay restitution from accumulated wealth or assets because he does not really have any. But he has sought and obtained work while on pretrial supervision, including recently obtaining a higher-paying job with UPS to both better his own circumstances but also get him closer to a state where he can make consistent restitution payments in this case. (PSR ¶73a). In preparing for the sentencing hearing in this case, Mr. Potter has also indicated that he is on track to pay off some debt within the next few months, which will then free up several hundred dollars a month in cash flow that can be factored into his restitution repayment plan. Imprisonment will interrupt his employment, delay payment of restitution, and may make it harder to obtain similar employment upon release from a term of incarceration. Imposing a prison sentence would punish Mr. Potter more severely, but it would not necessarily punish him more effectively than would a probationary sentence.

Whatever sentence the Court ultimately decides to impose will have significant deterrent effect. Mr. Potter is now a federal felon. He has lost the professional trust necessary to pursue the career for which he spent years training. He faces a restitution obligation that will impact his lifestyle for many years to come. He will carry this conviction into every future employment application, background check, and licensing or access decision. For an offender with no prior felony criminal history and no past failures on supervision, those consequences have weighty specific deterrent effect. They also send a message of general deterrence to others in positions of technological trust, that misuse of access can destroy a career, result in federal felony consequences, and lead to years of supervision and liberty restrictions.

The Court has tools short of imprisonment to impose a just and effective sentence that is "sufficient, but not greater than necessary" under the sentencing factors of 18 U.S.C. § 3553(a). A five-year probationary term will allow Mr. Potter to continue working, establish a restitution repayment plan that is subject to approval and monitoring for compliance, participate in cognitive behavioral treatment, submit to any computer-related search and monitoring conditions the Court might impose, avoid any unauthorized system access, and to remain under the supervision of the Court through the Probation Office. The Court can also impose more punitive conditions, such as intermittent confinement, time in community corrections, or a term of home detention, any of which would still permit continued employment and placement in the community. A probationary sentence will also preserve the Court's ability to impose imprisonment on Mr. Potter if he violates the conditions placed on him. That combination is sufficient to reflect the seriousness of the offense, promote respect for the law, provide a just punishment, deter future criminal activity, protect the public, and to provide correctional treatment in the most effective manner. *See Gall v. United States*, 552 U.S. 38, 48 at n.4 (2007).

(citing N. Cohen, The Law of Probation and Parole § 7:9 (2d ed. 1999) (noting that "the probation or parole conditions imposed on an individual can have a significant impact on both that person and society")).

**III.    CONCLUSION**

For all the reasons discussed above, Mr. Potter respectfully requests that the Court impose a sentence of probation in this case.  Such a sentence would recognize the seriousness of the offense, while also accounting for Mr. Potter's personal history, his full compliance with pretrial release, his acceptance of responsibility for his offense, the substantial collateral consequences of this conviction, and the other considerations noted above and in the presentence report.  A probationary sentence is "sufficient, but not greater than necessary," to accomplish the purposes of sentencing under 18 U.S.C. § 3553(a).

Respectfully submitted,

*/s/ Joseph Herrold*
Joseph Herrold
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610
FAX: (515) 309-9625
E-MAIL: joe_herrold@fd.org
ATTORNEY FOR THE DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2026, I electronically filed this document with the Clerk of Court using the ECF system, which will serve it on the appropriate parties.

*/s/ Joseph Herrold*

12