IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 4:25-cr-129 |
| v. | ) | |
| | ) | UNITED STATES' |
| EZEKIEL DEAN POTTER | ) | SENTENCING MEMORANDUM |
| | ) | |
| Defendant. | ) | |

For over a year and a half, Defendant relentlessly attacked Saydel Community School District's computer systems. He deleted its social media pages, erased employee email accounts, and revoked employee access to vital school accounts and programs. This caused district-wide havoc, tens of thousands of dollars in damage, and untold harm to students' education.

Sentencing is set for Thursday, June 11, 2026, at 8:30 a.m. The government will request that, based on all the relevant factors, the Court should sentence Defendant to 26 months of imprisonment to be followed by 2 years of supervised release.

## I.    PROCEDURAL BACKGROUND

On October 15, 2025, Defendant was charged with one count of computer fraud in violation of 18 U.S.C. § 1030(a)(5)(A), 1030(b), and 1030(c)(4)(B)(i). (ECF 2.) On January 28, 2026, Defendant pleaded guilty without a plea agreement. (ECF 30.) This Court accepted Defendant's plea and adjudicated him guilty. (ECF 36.)

A draft presentence investigation report (PSR) was filed on March 26, 2026. (ECF 37.) The government had no objections to the draft PSR. (ECF 39.) Defendant

objected to several factual allegations in the draft PSR that did not affect his guidelines' range. (ECF 38.)

A final PSR was filed on May 29, 2026. (ECF 40, hereinafter the "Final PSR.") The Final PSR calculates Defendant's advisory guidelines range as follows:

| | |
|---|---|
| Base offense level (§2B1.1(a)(2)) | 6 |
| Loss (§2B1.1(b)(1)(E)) | +8 |
| Sophisticated means (§2B1.1(b)(10)(C)) | +2 |
| Section 1030(a)(5)(A) conviction (§2B1.1(b)(19)(A)(ii)) | +4 |
| Abuse of trust/special skill (§3B1.3) | +2 |
| Offense Level: | 22 |
| Acceptance of responsibility: | -3 |
| Zero point offender: | -2 |
| Total Offense Level: | 17 |
| Criminal History Category | I |
| Advisory Guidelines Range | 24-30 months |

(Final PSR ¶¶ 32-43, 94.)

Based on communications with Defense counsel and the Probation Office, it is the government's understanding that the factual issues raised by Defendant in his PSR objections have been resolved. (*See* Final PSR pp. 29-30.) As a result, at the sentencing hearing, this Court will need to determine Defendant's ultimate sentence and award restitution.

## II.    The Court should order $59,668.81 in restitution.

Defendants convicted of offenses against property, including those committed by fraud or deceit, must pay restitution to victims of those offenses. *See* 18 U.S.C. § 3663A. In computer fraud cases, restitution may include costs to remediate damage to computer systems and restore functionality and victim access. *See United States v. Gammell*, 932 F.3d 1175, 1181 (8th Cir. 2019) (affirming restitution award relating

to "efforts to restore [an] affected website and applications to proper functionality");

*see also* 18 U.S.C. § 3663A(b)(1) (allowing restitution for property damage).

The appropriate measure of loss for restitution purposes "must be based on the amount of loss *actually* caused by the defendant's offense." *Gammell*, 932 F.3d at 1180 (emphasis in original) (quoting *United States v. Frazier*, 651 F.3d 899, 903-04 (8th Cir. 2011)). Here, it is the government's understanding the parties agree it cost SCSD and its insurer, Travelers, $59,668.81 to remediate the damage Defendant caused and restore SCSD's computer systems to their proper functionality.[1] (Final PSR ¶¶ 23-25.) $31,775.06 of these costs were borne by SCSD and $27,893.75 by Travelers. (*Id*.) It follows the Court should order $59,668.81 in restitution—$31,775.06 to SCSD and $27,893.75 to Travelers.

## III.    The sentencing factors in 18 U.S.C. § 3553(a) support a 26-month term of imprisonment followed by a 2-year term of supervised release.

For over a year and a half, Defendant was a plague on the Saydel Community School District. He deleted SCSD's Facebook page, stripped its employees of access to educational platforms and accounts, and tried again and again to reset its employees' usernames and passwords for various other platforms and accounts. This not only cost the district tens of thousands of dollars in employee time and vendor costs to remediate, but it caused widespread and repeated disruption to SCSD's ability to educate students.

---

[1] The government notes that while lost education time is properly included in Defendant's loss amount, it may not be awarded in restitution. *Compare* 18 U.S.C. § 1030(a)(11) (defining "loss" for computer fraud purposes to include "any . . . consequential damages incurred because of interruption of service") *and* USSG §2B1.1, comment. (n.3(A)(iii)) (defining loss in computer fraud cases to include "damages incurred because of interruption of service") *with* 18 U.S.C. § 3663A(b)(1) (limiting restitution compensation to cost of restoring property value).

Defendant's actions were not a one-time lapse in judgment. They were calculated, malicious, and seemingly motivated only by Defendant's vindictiveness. Even before he lost his job at SCSD, Defendant had begun accessing other employee accounts. (Final PSR ¶ 13.) And before leaving SCSD, he stole over 300 usernames and passwords for SCSD accounts and usernames. (Final PSR ¶ 22.) He would use these usernames and passwords to relentlessly attack SCSD's systems over the next 21 months and throughout transitions to two new employers. (*Id.* at ¶¶ 7-19.)

Despite quickly finding a new job at Casey's, Defendant immediately began harassing SCSD, first by taking down its Facebook page. (*Id.* at ¶¶ 8-9.) SCSD contacted Defendant about the Facebook incident (*id.* at ¶ 10), but that did nothing to deter him. If anything, it emboldened him.

He next targeted SCSD's ability to educate students. He attacked SCSD's Apple School Manager account, deleting user accounts, passwords, phone numbers, and billing information; removing device management information; and restricting SCSD employee access. (*Id.* at ¶ 11.) This disabled much of SCSD's technology district-wide and took a week for SCSD to fully remediate. (*Id.*)

After disabling SCSD's Apple devices, Defendant moved on to SCSD's GoDaddy account. (*Id.* at ¶¶ 12-13.) And then miscellaneous SCSD accounts. (*Id.* at ¶ 14.) And then SCSD's Schoology account. (*Id.* at ¶¶ 16-19.) This last attack caused widespread disruption to SCSD's systems and shut down classes for multiple hours. (*Id.* at ¶ 16.) It was then that SCSD discovered Defendant had gained access to many other school accounts, including with 4Schools, Schoology Integration, PowerSchool, and Freshdesk. (*Id.* at ¶ 17.)

But even this wasn't enough for Defendant. He returned a week later to delete nine different SCSD email accounts—including the IT Director's and Superintendent's—along with SCSD's Tools4Ever account and HelloID application. (*Id.* at ¶ 18.) Even receiving an alert about his intrusion—and knowing SCSD would also see the alert—didn't deter Defendant. (*Id.* at ¶ 19.) He simply began using a Virtual Private Network to mask his true IP address and identity. (*Id.*)

While most of Defendant's vitriol was directed at SCSD, it appears Defendant also attempted to gain unauthorized access to a subsequent employer's computer systems. (*Id.* at ¶ 20.) This attempt validated the employer's, The Printer Inc. ("TPI"), concern about Defendant's "access to critical areas of TPI's network, which raised the risk of him potentially compromising TPI's infrastructure." (*Id.* at ¶ 76.)

Defendant's attacks on SCSD's systems are troubling not just because of the significant damage he caused—tens of thousands of dollars, without accounting for the unknown but clearly extensive disruption to teaching and school activities (*id.* at ¶¶ 10-11, 16, 18)—but also because of Defendant's motivations. It appears Defendant repeatedly assaulted SCSD out of spite and pure maliciousness, despite knowing his actions would affect not only his former boss and IT colleagues, but also school faculty, administrators, and students. (*Id.* at ¶¶ 9, 11, 16-18.)

A 26-month sentence is sufficient but not greater than necessary to protect the public and impress upon Defendant the seriousness of his crimes. The government requests a 2-year term of supervised release to assist Defendant's transition back into society, particularly because Defendant has expressed an intent to continue working in the IT field. (Id. at ¶¶ 73, 85.)

## IV.    Conclusion

For the foregoing reasons, the government respectfully requests the Court sentence Defendant to 26-months' imprisonment followed by a 2-year term of supervised release.

Respectfully submitted,

David C. Waterman
United States Attorney

By: */s/ Joseph H. Lubben*
Joseph H. Lubben
Assistant United States Attorney
Neal Smith Federal Building
210 Walnut Street, Suite 455
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: Joseph.Lubben@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2026, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

U.S. Mail        Fax         Hand Delivery

X   ECF/Electronic filing        Other means

UNITED STATES ATTORNEY

By: /s/ Alisha Rankin
     Paralegal Specialist